ORAL ARGUMENT NOT YET SCHEDULED

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 25-3066

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

SHANE BRIAN LAMOND,

*Defendant-Appellant*.

Appeal from the United States District Court for the District of Columbia, No. 1:23-cr-00177-ABJ-1 (Hon. Amy Berman Jackson)

# REPLY BRIEF FOR DEFENDANT-APPELLANT SHANE BRIAN LAMOND

ANDREW E. GOLDSMITH
RENO G. VARGHESE
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
agoldsmith@kellogghansen.com
rvarghese@kellogghansen.com

*Appointed Counsel for Defendant-Appellant Shane Brian Lamond*

August 18, 2026

## TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES .......... iii

GLOSSARY .......... viii

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 2

I. The Statutory Challenge Is Preserved .......... 2

A. The Indictment Was Not Facially Deficient .......... 3

B. At Most, Lamond Forfeited, and the Error Is Plain .......... 4

C. Good Cause Independently Supports Review .......... 5

II. Section 22-722(a)(6) Does Not Reach Pre-Charge Police Investigations .......... 6

A. Subsection (a)(6)'s Text and Structure Exclude Pre-Charge Police Investigations .......... 6

B. The Government's Textual Arguments Are Unpersuasive .......... 8

C. A Century of Statutory History Confirms the Settled Meaning .......... 12

D. The Government's Prosecution Theory Is Too Late and Proves Too Little .......... 14

III. Internal Policy Violations Cannot Prove Corrupt Obstruction .......... 16

A. "Corruptly" Requires a Proceeding-Directed Wrongful Purpose .......... 16

B. The Government Relies on a Motive the District Court Rejected .......... 17

C. The Government Cannot Explain Away the Record Facts Refuting Corrupt Intent ....................18

IV. Section 1001 Does Not Criminalize the Government's After-the-Fact Paraphrases of Lamond's Statements ....................21

A. Count 2: "One-Sided" Was Not a Determinate Factual Denial ....................22

B. Count 3: "Without Tipping Him Off" Was a Subjective Description ....................24

V. Count 4 Rests on Speculation, Not Proof Beyond a Reasonable Doubt ....................26

VI. At Minimum, Reversal of Count 1 Requires Vacatur of Counts 2 through 4 ....................28

CONCLUSION ....................30

CERTIFICATE OF COMPLIANCE

ADDENDUM

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page

**CASES**

*Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008) ............................................9

* *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005)......................16, 17, 20

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002)................................................12

*Beckles v. United States*, 580 U.S. 256 (2017) .......................................................10

* *Bronston v. United States*, 409 U.S. 352 (1973)................................................22, 25

*Brookens v. United States*, 182 A.3d 123 (D.C. 2018)............................................15

*Brown v. United States*, 89 A.3d 98 (D.C. 2014) .....................................................7

*Campaign Legal Ctr. v. FEC*, 106 F.4th 1175 (D.C. Cir. 2024) ...............................5

* *Chiarella v. United States*, 445 U.S. 222 (1980)..............................................14, 18

*Corley v. United States*, 556 U.S. 303 (2009).........................................................10

*Crutchfield v. United States*, 779 A.2d 307 (D.C. 2001)..........................................11

*Decuir v. United States*, 285 A.3d 512 (D.C. 2022)..................................................7

*Dunn v. United States*, 442 U.S. 100 (1979)...........................................................14

*Fischer v. United States*, 603 U.S. 480 (2024) .........................................................9

*Hall v. United States*, 343 A.2d 35 (D.C. 1975)........................................................4

*Hamling v. United States*, 418 U.S. 87 (1974) .........................................................3

* *Hawkins v. United States*, 119 A.3d 687 (D.C. 2015).......................................16, 20

---

Authorities principally relied upon are designated by an asterisk (*).

*Jennings v. United States*, 351 A.3d 1075 (D.C. 2026).....................................5, 26

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980).....................................................11

*McDonnell v. United States*, 579 U.S. 550 (2016) ..................................................1

*Pettibone v. United States*, 148 U.S. 197 (1893) ...................................................12

*Pugin v. Garland*, 599 U.S. 600 (2023)......................................................... 11-12

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012)................................................................................................ 8-9

*Sealed Case*, *In re*, 573 F.3d 844 (D.C. Cir. 2009) .................................................4

*Sekhar v. United States*, 570 U.S. 729 (2013) ........................................................7

* *Smith v. United States*, 357 A.2d 418 (D.C. 1976).....................................7, 12, 13

*Smith v. United States*, 68 A.3d 729 (D.C. 2013)...................................................16

*State v. O'Neill*, 682 A.2d 943 (Vt. 1996) ..............................................................12

*State v. Pagano*, 669 A.2d 1339 (Md. 1996)..........................................................12

*State v. Pari*, 546 A.2d 175 (R.I. 1988) .................................................................12

* *Thompson v. United States*, 604 U.S. 408 (2025)...............................................9, 23

* *United States v. Aguilar*, 515 U.S. 593 (1995) ...................................................6, 16

*United States v. Bowline*, 917 F.3d 1227 (10th Cir. 2019)...................................4, 5

*United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024)......................................10, 11

* *United States v. Brown*, 688 F.2d 596 (9th Cir. 1982) .....................................11, 15

* *United States v. Burroughs*, 810 F.3d 833 (D.C. Cir. 2016) ....................................4

*United States v. Campos*, 137 F.4th 840 (D.C. Cir. 2025) .......................................4

*United States v. Chapin*, 515 F.2d 1274 (D.C. Cir. 1975).....................................23

* *United States v. Cohen*, 301 F.3d 152 (3d Cir. 2002).............................................15

*United States v. Doost*, 3 F.4th 432 (D.C. Cir. 2021)..............................................25

*United States v. Frankhauser*, 80 F.3d 641 (1st Cir. 1996).....................................15

*United States v. James*, 764 F.2d 885 (D.C. Cir. 1985)...........................................20

*United States v. Kelly*, 552 F.3d 824 (D.C. Cir. 2009)...............................................4

*United States v. Laureys*, 653 F.3d 27 (D.C. Cir. 2011).............................................4

*United States v. Mejia*, 597 F.3d 1329 (D.C. Cir. 2010)..........................................17

*United States v. Mendez-Santana*, 645 F.3d 822 (6th Cir. 2011)..............................5

*United States v. Milton*, 8 F.3d 39 (D.C. Cir. 1993).................................................24

*United States v. Pelullo*, 14 F.3d 881 (3d Cir. 1994)................................................29

*United States v. Reveron Martinez*, 836 F.2d 684 (1st Cir. 1988)...........................24

* *United States v. Rooney*, 37 F.3d 847 (2d Cir. 1994) ..............................................29

*United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980)..........................................24

* *United States v. Soto*, 794 F.3d 635 (6th Cir. 2015)...................................................4

* *United States v. Streater*, 70 F.3d 1314 (D.C. Cir. 1995).................................21, 28

* *United States v. Teffera*, 985 F.2d 1082 (D.C. Cir. 1993) .......................................26

*United States v. Thorne*, 997 F.2d 1504 (D.C. Cir. 1993) .......................................26

*United States v. Yakou*, 428 F.3d 241 (D.C. Cir. 2005)..............................................3

*Webb v. United States*, 318 A.3d 502 (D.C. 2024).....................................................7

* *Wynn v. United States*, 48 A.3d 181 (D.C. 2012) ..................................3, 5, 7, 10, 11

**STATUTES AND RULES**

18 U.S.C.:

§ 1503 .......... 6, 11, 12, 15, 16

§ 1510 .......... 13

§ 1512 .......... 13

D.C. Code:

§ 22-721(4) .......... 1, 8

§ 22-722 .......... 7, 8, 16

§ 22-722(a)(2) .......... 11

§ 22-722(a)(4) .......... 7

§ 22-722(a)(6) .......... 1, 3, 6, 8, 12, 13

§ 22-723 .......... 1, 7, 8, 9

§ 22-723(b) .......... 8

§ 23-113 .......... 15

D.C. Law 4-164, § 502, 29 D.C. Reg. 3976 (1982) .......... 13

D.C. Law 9-268, § 2(c), 39 D.C. Reg. 5702 (1993) .......... 13

D.C. Law 10-256, § 3, 42 D.C. Reg. 20 (1995) .......... 13

Vt. Stat. Ann. tit. 13, § 3015 .......... 12

Fed. R. Crim. P.:

Rule 12 .......... 3, 4

Rule 12(b)(3) ....................................................................................3, 4

Rule 12(c)(3).......................................................................................5

Fed. R. Evid. 404(b).........................................................................................29

**OTHER MATERIALS**

*Black's Law Dictionary* (11th ed. 2019)..................................................................10

John Decker, *The Varying Parameters of Obstruction of Justice in American Criminal Law*, 65 La. L. Rev. 49 (2004) ..................................6, 12

U.S.S.G. § 2J1.2(b)(2) (2025)..........................................................................10

## GLOSSARY

| | |
|---|---|
| MPD | D.C. Metropolitan Police Department |
| Op.Br. | Opening Brief for Defendant-Appellant Shane Brian Lamond (D.C. Cir. filed May 8, 2026) |

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Supreme Court has repeatedly refused to let obstruction and false-statement statutes become catchall criminal codes. Obstruction requires a nexus to a proceeding the statute protects; false-statement law punishes falsehood, not imprecision. For this reason, a statute "that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter." *McDonnell v. United States*, 579 U.S. 550, 576 (2016). The government's response confirms Lamond's convictions failed that test.

On Count 1—obstruction—the government's first answer is that the Court should not read the statute at all (at 27-29). Its second gives away the case: "§ 22-723 applies even to incipient police investigations, whereas § 22-722(a)(6) does not" (at 44). Both turn on the same defined term, § 22-721(4), so the difference can come only from the words subsection (a)(6) adds—"the due administration of justice"—a phrase carrying a century of settled, tribunal-centered meaning. The government offers no textual answer; rather, it calls the restriction "counterintuitive, even absurd" (at 38). But convenience is not a canon of construction. On the government's rationale, "corruptly" becomes the only boundary on a 30-year felony, because "[m]any police investigations do not result in judicial proceedings" (at 48).

And even that boundary was breached below. The district court confirmed Lamond was "not on trial for the violation of MPD General Orders," as they lacked "the force of law," A1331; A1382—then found corrupt intent through "violations of general orders and rules of ethics." A1382. The government offers no principle separating the felon from every officer who breaks a workplace rule.

The false-statement counts fare no better. The government does not contest that the agents' questions underlying Counts 2 and 3 were vague; it argues vagueness cuts *against Lamond* (at 61 n.13). That inverts the law: the questioner, not the answerer, bears the risk of imprecision. On Count 4, the government concedes "no message was recovered" (at 64), then supplies the missing words by stacking "reasonable inference" on "reasonable inference" (at 64-65). Such stacking cannot prove the crime.

Every count required the meat axe; none survives the scalpel. This Court should reverse and enter judgments of acquittal or, at minimum, vacate the convictions.

## ARGUMENT

### I. The Statutory Challenge Is Preserved

The government leads with waiver (at 27-30), which fails three times over: (1) the claim is preserved; (2) at most it was forfeited, and the error is plain; and (3) good cause supports review.

### A. The Indictment Was Not Facially Deficient

The government (at 27-29) casts Lamond's statutory argument as "a defect in the indictment," required by Rule 12(b)(3) to be raised pretrial if the basis is "then reasonably available" and "can [be] determine[d] without a trial." Neither condition was satisfied.

Count 1 "contain[ed] the elements of the offense charged and fairly inform[ed Lamond] of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), because it tracked § 22-722(a)(6) and alleged Lamond corruptly obstructed "the investigation and prosecution" of the banner-burning offense, A37. Over a quarter of the 72 incorporated allegations describe conduct after Tarrio's arrest, including a "Federal Investigation" for which "a federal grand jury was convened." A32-A37. Those fit "comfortably" within § 22-722(a)(6). *Wynn v. United States*, 48 A.3d 181, 189 (D.C. 2012). But the government presented no post-arrest obstruction or prosecution evidence at trial. Lamond moved under Rule 12(b)(3) once that failure made his motion ripe.

Nor could the court have resolved the question pretrial. Rule 12 reaches what can be decided without trying "evidence relevant to the question of guilt or innocence," *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005) (citation omitted), and the government's claim that a pretrial ruling would have "materially affected" its presentation of evidence (at 28) confirms material facts remained

disputed. Lamond could not waive his argument while the government retained the option to prove the obstruction it charged.

### B. At Most, Lamond Forfeited, and the Error Is Plain

Even if Lamond's claim was untimely, the Court reviews forfeiture for plain error. *United States v. Soto*, 794 F.3d 635, 652 (6th Cir. 2015) (after the 2014 amendment to Rule 12 "abandon[ed]" the term "waiver," an untimely Rule 12(b)(3) motion is "no longer" "intentional relinquishment of a known right").[1]

Lamond satisfies all four plain-error requirements, and the government disputes only plainness (at 48-49). It does not contest that, if erroneous, resting his conviction on interference with a pre-charge MPD investigation affected the outcome and worked a miscarriage of justice. *See infra* Part II. This Court finds plain error where it "has not ruled on the question." *United States v. Laureys*, 653 F.3d 27, 32-33 (D.C. Cir. 2011) ("rarely," not never); *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009) ("Even absent binding case law," an error is plain "if it

[1] *Hall v. United States* (at 28-29) involved an attack on an indictment's specificity for the first time on appeal—and *the court reached the merits* because a defective indictment "may be struck down on appeal." 343 A.2d 35, 37 (D.C. 1975). *United States v. Bowline* (at 28) rested on the Tenth Circuit's pre-amendment waiver-and-good-cause practice and inapplicable "policy reasons." 917 F.3d 1227, 1236-37 (10th Cir. 2019). This Court has applied plain-error review before and after the amendment. *See United States v. Kelly*, 552 F.3d 824, 829 (D.C. Cir. 2009); *United States v. Burroughs*, 810 F.3d 833, 836 (D.C. Cir. 2016); *United States v. Campos*, 137 F.4th 840, 847 (D.C. Cir. 2025).

violates an 'absolutely clear' legal norm," such as "the clarity of a statutory provision.").[2] Confronting an identical claim in an identical posture, *Wynn* reversed because it is "an obvious error and a miscarriage of justice for a defendant to stand convicted of an offense which the law does not make a crime." 48 A.3d at 188 (citation omitted).

**C. Good Cause Independently Supports Review**

Rule 12(c)(3) permits an untimely motion on "good cause," which exists because the district court "heard and addressed the merits of the issue," A1318-A1328, so the general bar on unraised arguments "does not apply." *Campaign Legal Ctr. v. FEC*, 106 F.4th 1175, 1190 (D.C. Cir. 2024); *accord United States v. Mendez-Santana*, 645 F.3d 822, 829 (6th Cir. 2011) (merits resolution was "an implicit finding of good cause to excuse the late filing").[3]

The government identifies no prejudice: its claim that its presentation would have been "materially affected" (at 28) names no omitted proof on a covered proceeding.

[2] *Jennings v. United States* (at 49) "decline[d] to decide" the question because the government conceded vacatur—while citing *Wynn* approvingly. 351 A.3d 1075, 1106 (D.C. 2026).

[3] By entertaining Lamond's motion, the district court necessarily found good cause. On appeal, *the government* must establish an abuse of discretion (it does not). *Bowline*, 917 F.3d at 1238.

## II. Section 22-722(a)(6) Does Not Reach Pre-Charge Police Investigations

Subsection (a)(6) punishes "[c]orruptly . . . obstruct[ing] or imped[ing] . . . the due administration of justice in any official proceeding." D.C. Code § 22-722(a)(6). For a century, that phrase has described adjudication—not executive investigation. The government's chief answer—that there is "little practical difference" between this case and one involving a "technically pending" proceeding (at 46), and that relying on the textual requirement would be "counterintuitive, even absurd" (at 38-39)—concedes the text and pleads convenience. But that "practical difference" is the line between conduct the Council criminalized and conduct it did not.

### A. Subsection (a)(6)'s Text and Structure Exclude Pre-Charge Police Investigations

The subsection has two textual requirements: an "official proceeding" and obstruction of "the due administration of justice." D.C. Code § 22-722(a)(6). The government's reading deletes the second (at 26).

"Due administration of justice" is the signature language of 18 U.S.C. § 1503, which requires "judicial or grand jury proceedings"—not "some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority." *United States v. Aguilar*, 515 U.S. 593, 599 (1995).[4] The phrase was

[4] John Decker, *The Varying Parameters of Obstruction of Justice in American Criminal Law*, 65 La. L. Rev. 49, 82 (2004) (50-state survey observing D.C.'s "broadly-stated obstruction statute [is] similar to the federal omnibus clause").

transplanted into § 22-722, *see Smith v. United States*, 357 A.2d 418, 419-20 (D.C. 1976), and "it brings the old soil with it." *Sekhar v. United States*, 570 U.S. 729, 733 (2013). Although "official proceeding," read alone, "could include an initial police investigation," the complete phrase describes "the proper functioning and integrity of a court or hearing," which is why *Wynn* reversed an obstruction conviction predicated on a police investigation. 48 A.3d at 189-91.

That reading does not leave "investigation" idle; it reaches grand-jury investigations, adjudicative agency inquiries, and investigations within an existing prosecution, including hiding evidence and lying to police after a suspect has "already been arrested." *See* Op.Br. 31-32 (discussing *Brown v. United States*, 89 A.3d 98 (D.C. 2014), and *Decuir v. United States*, 285 A.3d 512 (D.C. 2022)). "Due administration of justice" defines the function protected within those fora; pre-charge criminal investigations fall outside.

When the Council addressed the investigative stage, it said so expressly and legislated narrowly. Section 22-722(a)(4) reaches pre-charge conduct only through defined acts—*injuring a person or property* on account of the giving of information to an investigator "in the course of any criminal investigation." And § 22-723—§ 22-722's "compl[e]mentary hal[f]," *Webb v. United States*, 318 A.3d 502, 505 (D.C. 2024)—criminalizes evidence tampering whenever a proceeding "has begun" or "is likely to be instituted," but carries a tailored three-year penalty,

§ 22-723(b), a tenth of § 22-722's 30-year maximum. The Council did not cabin investigative-stage liability by conduct in one provision and by punishment in another, only to bury a boundless version of both in a century-old judicial-obstruction clause.

**B. The Government's Textual Arguments Are Unpersuasive**

**1.** The government concedes: "§ 22-723 applies even to incipient police investigations, whereas § 22-722(a)(6) does not" (at 44). But both turn on the same defined term, "official proceeding." D.C. Code § 22-721(4). If that term reaches incipient investigations in § 22-723, but not in subsection (a)(6), the difference must come from the words subsection (a)(6) adds and § 22-723 omits: "the due administration of justice."

The government's alternative explanation—that the provisions have "different requirements" (at 43-44)—proves Lamond's point. Every requirement § 22-723 contains and subsection (a)(6) lacks makes the catchall the easier offense to prove, with ten times the exposure. The flaw in the government's reading is not "redundanc[y]" (at 44), but nullification. No prosecutor would ever again use § 22-723.

The government alleges that catchalls cover "swaths of conduct . . . the statute specifically prohibits" (at 37)—i.e., the catchall swallows the specific, rather than the "specific govern[ing] the general." *RadLAX Gateway Hotel, LLC v.*

*Amalgamated Bank*, 566 U.S. 639, 645 (2012). Yet a catchall reaches additional means of committing the same kind of offense; it cannot "render superfluous the careful delineation of different types of obstructive conduct" surrounding it. *Fischer v. United States*, 603 U.S. 480, 493 (2024). The government's evidence shows as much: the verdict relied on Lamond's purported deletion of Telegram messages, A1384-A1385, conduct the Council addressed in § 22-723, which the government never charged.

Nor can the government delineate an endpoint: "Incipient" investigations are out; "formal, deliberate" ones are in (at 41, 44). The government never explains when an investigation crosses that line, and its discussion of *Wynn* denies that formality supplies a "principled distinction" (at 41). That leaves only "corruptly" (at 48), which, as Part III shows, the government improperly defines through agency policy.

**2.** The government's affirmative textual case stops a clause short, arguing "official proceeding" includes "any . . . investigation," so an MPD investigation qualifies (at 33-35). But "any" is "[e]xpansive," not "transformative." *Thompson v. United States*, 604 U.S. 408, 414 (2025) (citations omitted).[5] The

[5] *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 226-27 (2008) (at 34), construed "any" broadly only after determining "nothing in the overall statutory context" supported narrowing it.

government submits the Council "could have" excluded MPD investigations "in plain terms" (at 35). *It did*, by adopting a phrase with a century of settled meaning. *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("effect [should be] given to all [a statute's] provisions" (citation omitted)). The government's lead case, *United States v. Brock*, even rejects "definitional divide and conquer" because words in combination may carry a narrower meaning than each alone. 94 F.4th 39, 50-53 (D.C. Cir. 2024).

The government's reliance on *Black's Law Dictionary* (at 36-42) makes the same mistake: It purports to define "administration of justice," not "*due* administration of justice." And its leading case, *Brock*, construed a Sentencing Guideline—U.S.S.G. § 2J1.2(b)(2)—not § 1503 or any criminal prohibition. The Guidelines "do not regulate the public by prohibiting any conduct." *Beckles v. United States*, 580 U.S. 256, 266 (2017) (citation omitted).

Indeed, *Brock* supports Lamond. *First*, *Brock* uses the full phrase: The "due administration of justice" is "[t]he proper functioning and integrity of a *court or other tribunal* and the proceedings before it." 94 F.4th at 51 (quoting *Black's Law Dictionary*) (emphasis added). The government's claim that *Wynn* "did not meaningfully interpret the phrase" (at 41) ignores *Wynn*'s extended analysis of

those very definitions. *See* 48 A.3d at 189-91.[6] *Second*, *Brock*'s categories for the "due administration of justice" reach "judicial, quasi-judicial, and adjunct investigative proceedings that apply the force of the state to determine or maintain the legal rights of individuals and entities." 94 F.4th at 51-52.[7] Those categories do not cover a pre-charge MPD investigation of a misdemeanor without determining anyone's rights. *United States v. Brown*, 688 F.2d 596, 598 (9th Cir. 1982) (collecting cases and holding "obstruction of a government agency's investigation is insufficient" because it is "wholly outside the context of an ongoing judicial or quasi-judicial proceeding").

The government's reliance on *Pugin v. Garland* (at 38-39) fares no better: *Pugin* construed the Immigration and Nationality Act's capacious "offense relating to obstruction of justice" and expressly distinguished § 1503. 599 U.S. 600, 603-09

---

[6] *Crutchfield v. United States*, 779 A.2d 307, 328 (D.C. 2001) (at 35) affirmed a conviction under § 22-722(a)(2). *Wynn* clarified *Crutchfield* had not "'held' that a police investigation constitutes an 'official proceeding.'" 48 A.3d at 187.

[7] The government's other preferred truncation—the "governmental process of investigating, determining, and enforcing the legal rights of persons" (at 35), points to adjudication, not executive investigation. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 247 (1980) (an enforcement official "performs no judicial or quasi-judicial functions").

(2023).[8] The government cites no cases sustaining a conviction for interference with a pre-charge police investigation.[9]

### C. A Century of Statutory History Confirms the Settled Meaning

Defeated by text and structure, the government appeals to legislative history, which "cannot amend the clear and unambiguous language of a statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 457 (2002). History supports Lamond anyway: Since 1901, District law has reached police investigations only by saying so expressly.

**1.** In 1901, Congress (then the District's legislature) enacted the District's first obstruction statute, tracking § 1503's predecessor. Courts read both statutes as "limited to those obstructions occurring during the pendency of formal court proceedings." *Smith*, 357 A.2d at 420. Congress responded in 1967 not by rewriting that clause but by adding new text. It "specifically made obstruction of a

---

[8] The government is wrong that § 1503 is narrow because it enumerates judicial functions (in a separate clause) (at 39-40). The limit is historical: The common-law crime of obstruction reached interference with judicial process, and that restriction survives in § 1503's requirement of a pending judicial proceeding. *Pettibone v. United States*, 148 U.S. 197, 203 (1893) (interpreting § 1503's predecessor by "resort[ing] to the common law"); Decker, 65 La. L. Rev. at 125.

[9] *State v. O'Neill*, 682 A.2d 943 (Vt. 1996) is inapt (at 40). *O'Neill* construed a Vermont statute that expressly reaches matters "*to be heard* before any court of the state"—language sections 1503 and 22-722(a)(6) lack. *Id.* at 946-47 (quoting Vt. Stat. Ann. tit. 13, § 3015) (emphasis added). States that follow the § 1503 language require a judicial proceeding. *E.g.*, *State v. Pagano*, 669 A.2d 1339, 1341, 1344 (Md. 1996); *State v. Pari*, 546 A.2d 175, 181-82 (R.I. 1988).

criminal investigation a criminal offense by adding a new section, 18 U.S.C. § 1510, to the federal code" and parallel language, in a separate clause, to the local statute. *Smith*, 357 A.2d at 420-21 & nn. 4 & 6. The "no logic to the distinction" Senate Report language the government quotes (at 38) is the *justification for that addition*: Everyone, including Congress, understood the existing clause did not reach investigations.

**2.** In 1982, the Council reorganized the statute into five enumerated paragraphs, separating court-facing provisions (1, 2, and 5) from investigation-facing provisions (3 and 4). D.C. Law 4-164, § 502, 29 D.C. Reg. 3976 (1982). Neither borrowed the other's vocabulary.

**3.** In 1993, the Council rewrote the witness-protection provisions on the model of the federal witness-tampering statute, 18 U.S.C. § 1512, and deleted the due-administration clause. It introduced the defined term "official proceeding" and extended protection expressly to persons "[r]eporting to a law enforcement officer the commission of . . . a criminal offense." D.C. Law 9-268, § 2(c), 39 D.C. Reg. 5702 (1993). The Judiciary Committee report the government quotes (at 31) accompanied *that* overhaul. Where the Council wanted police-stage coverage, it wrote police-stage words.

**4.** In 1995, the Council added subsection (a)(6), restoring the historic clause. D.C. Law 10-256, § 3, 42 D.C. Reg. 20 (1995). Reenacting century-old

words invokes their settled meaning; it does not conscript them into the Code's broadest felony—then punishable by life imprisonment.

**5.** The government's remaining history is witness testimony. But a prosecutor's statement at committee (at 32) is not enacted text. Even at face value, it describes bribery, not interference with an investigation.[10]

### D. The Government's Prosecution Theory Is Too Late and Proves Too Little

That leaves the "prosecution" theory, made for the first time on appeal (at 45-48). But this Court "cannot affirm a criminal conviction on the basis of a theory not presented [at trial]." *Chiarella v. United States*, 445 U.S. 222, 236 (1980); *Dunn v. United States*, 442 U.S. 100, 106 (1979) (affirmance on a ground never tried "offends the most basic notions of due process"). The government's closing described Count 1 as obstruction of the *banner-burning investigation*, never mentioning Tarrio's prosecution, A1243-A1263; the verdict tracked that theory, A1362-A1385; and the court called the offense obstruction of Lamond's "department's investigation" at sentencing, A1430.

Lamond never conceded this point. The government (at 45-46) quotes a sentence without its condition: Trial counsel said that *if* Lamond had "affirmatively

[10] The Public Defender statement (at 32) is weaker still: The defense organization's *concern* was about an unenacted draft.

warned Mr. Tarrio of his impending arrest *so as to deter him from apprehension*," then "the government could have pursued a theory . . . that Mr. Lamond interfered with Mr. Tarrio's prosecution . . . by witness tampering." ECF 90, at 7 (emphasis added). That describes a case the government never charged or tried. *See* Op.Br. 37-40.

Finally, the government claims (at 47-48) that "Lamond's obstructive acts continued after the judicial issuance of the warrant," which purportedly commences a prosecution under D.C. Code § 23-113. But § 23-113 is a statute of limitations. *See Brookens v. United States*, 182 A.3d 123, 124-25 (D.C. 2018). It fixes the date a prosecution "is commenced" for tolling purposes; it does not transform an *ex parte* warrant application into a proceeding in which justice is administered. The government cites no court holding that an arrest warrant starts judicial proceedings. *See* Op.Br. 30 (discussing *United States v. Cohen*, 301 F.3d 152, 157-58 (3d Cir. 2002) (Alito, J.)).[11]

---

[11] Courts have rejected efforts to transform executive investigation tools into "judicial proceeding[s]." *See* Op.Br. 30. *Brown* reversed the § 1503 conviction of an officer prosecuted "for attempting to warn the target of a valid search warrant." 688 F.2d at 596-98; *cf. United States v. Frankhauser*, 80 F.3d 641, 651 (1st Cir. 1996) (knowledge of an FBI investigation and subpoena did not establish knowledge of grand-jury proceedings).

## III. Internal Policy Violations Cannot Prove Corrupt Obstruction

The government relies on character attacks and a catalogue of workplace violations, culminating in a section on the "[i]mpropriety" of Lamond's conduct (at 17-21), to defend the corrupt-intent finding. None of that proves Lamond intended to interfere with Tarrio's misdemeanor investigation or prosecution.

### A. "Corruptly" Requires a Proceeding-Directed Wrongful Purpose

"Corruptly" prevents obstruction statutes from criminalizing every act that complicates government work. It requires conscious wrongdoing directed at the proceeding the statute protects. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005) ("Only persons conscious of wrongdoing can be said to 'knowingly . . . corruptly'" act); *Hawkins v. United States*, 119 A.3d 687, 701-02 (D.C. 2015) (adopting *Arthur Andersen* for § 22-722). Corrupt intent thus means an "intent to undermine the integrity of the pending [grand jury] investigation" and requires "specific intent to subvert . . . the proceeding." *Id.* at 701 (quoting *Smith v. United States*, 68 A.3d 729, 742 (D.C. 2013)); *accord Aguilar*, 515 U.S. at 599 (§ 1503 requires "an intent to influence judicial or grand jury proceedings").

The district court recognized the limit—Lamond was "not on trial for the violation of MPD General Orders," which lack "the force of law," A1331; A1382—but crossed it anyway. Reaching the dispositive question—"How do we know beyond a reasonable doubt that he knew all this was wrong?"—it pointed to

Lamond's "repeated violations of general orders and rules of ethics." A1382-A1383. That defined the reach of a 30-year felony by agency guidelines.

The testimony the government musters (at 51-55) says the same. Its witnesses testified the information "shouldn't be disseminated outside of law enforcement" (at 18); Lamond "should have preserved" his communications (at 18); and his warrant conversations "should not have occurred, and . . . should have been documented" (at 20). The court summarized Chief Carroll's testimony as establishing the disclosures were "not consistent with police procedures," "police objectives," or "how a police officer is supposed to act." A1378. That testimony describes *impropriety*, not corrupt intent. The statute requires the latter.[12]

**B. The Government Relies on a Motive the District Court Rejected**

Personal benefit was the government's lead explanation for why Lamond undermined the investigation, and its brief repeats the theme: Lamond was a "double-agent" (at 55-56) who "personally . . . support[ed]" Proud Boys (at 55 (quoting A516)). But the district court opened its verdict by putting that theory

[12] *United States v. Mejia* (at 55) does not fill the gap. 597 F.3d 1329 (D.C. Cir. 2010). There, the Court upheld a permissive natural-and-probable-consequences instruction as to general intent while noting such an instruction "may be misleading" in a specific-intent case (like this one). *Id*. at 1341 & n.7. Foreseeability cannot replace consciousness of wrongdoing. *Arthur Andersen*, 544 U.S. at 706.

aside: "[T]hat's not part of this case. . . . There's no suggestion that the defendant stood to benefit personally from any of the alleged conduct." A1315-A1316.

This Court reviews the theory on which the conviction rests, not one the factfinder expressly declined to adopt. *Chiarella*, 445 U.S. at 236. Once the rejected motive and legally nonbinding policies are stripped away, nothing remains bearing on Lamond's purpose.

### C. The Government Cannot Explain Away the Record Facts Refuting Corrupt Intent

Lamond's opening brief identified (at 37-42) the record evidence inconsistent with any intent to obstruct that the district court ignored or mischaracterized, including Lamond's longstanding give-and-take relationship with Tarrio, conducted with his superiors' knowledge. The government too ignores or mischaracterizes each point.

*First*, the verdict and the response treat Lamond as having buried a "confession" at the Dubliner (at 52 & n.7). The record shows the opposite sequence: When Tarrio's anonymous tip arrived, Lamond immediately messaged his supervisor, "Yes! Remember what he told me?" He had already reported the conversation. A1598. The government answers that Tarrio told associates that he "confessed" (at 52 n.7). But Tarrio's label is not evidence of the conversation's content: A suspect can volunteer something inculpatory (and even believe he

confessed) without making the definitive admission Lamond said Tarrio "would never commit" to. A1669-A1670; Op.Br. 41.

*Second*, the hate-crime "advocacy." The government says Lamond's "opinion carried weight" because MPD later "backed off" the enhancement (at 52-53 n.8 (quoting A495)). The warrant disproves that inference. Mufti submitted it on December 21 with a hate-crime designation, and that designation remained on December 29—well after Lamond expressed his views. A1503; A1536. Lamond also had no authority over the designation: his committee merely "categorized" hate crimes "for reporting purposes to the FBI." Op.Br. 9 n.3; A534; A1167-A1169. The government identifies no evidence of contrary authority.

*Third*, the government's theory that Lamond was trying to conceal Tarrio's identity defies logic. Tarrio had publicly claimed responsibility *five* times. Op.Br. 30 n.8. And Lamond helped establish Tarrio's involvement. Within two hours of Detective Then's request to identify Tarrio from an unclear photograph, Lamond sent photographs showing "what [Tarrio] looked like and how he was dressed [o]n December 12th." A1603-A1604. He then confirmed "with 100% certainty" that the voice claiming responsibility for the banner-burning on a podcast was Tarrio's.[13]

[13] The government downplays the public confessions (at 19)—a social-media post could be "hacked"—but never explains Tarrio's podcast confession or newspaper interviews, and Lamond's voice authentication eliminated any

A1606. Later, Lamond supplied the flight information investigators used to execute Tarrio's warrant. A172-A173; A1610-A1611. The government dwells on Lamond's initial qualified photo identification (at 56-57) but ignores everything he did afterward. Someone trying to conceal Tarrio's involvement would not repeatedly furnish investigators the evidence to identify, locate, and arrest him.

*Fourth*, the government's theory that Lamond deleted messages "to protect himself" (at 58) is irrelevant.[14] A desire to protect oneself from discipline is not a purpose to obstruct a judicial proceeding, much less evidence that Lamond intended to obstruct Tarrio's misdemeanor prosecution. And the requisite obstructive intent must be directed at a proceeding the defendant contemplates. *Arthur Andersen*, 544 U.S. at 708; *Hawkins*, 119 A.3d at 701. *United States v. James* (at 58) is not to the contrary: It drew a consciousness-of-guilt inference from a defendant caught flushing narcotics in his own drug factory—to prove possession, not a proceeding-directed mens rea. 764 F.2d 885, 889 (D.C. Cir. 1985).

---

uncertainty. A165; A1606. And any delay in charging Tarrio was not Lamond's doing. Op.Br. 40.

[14] Nor can the government explain why Lamond would delete his messages: it argues Lamond arrived at the interview "amicable, jovial" (at 22), "unaware . . . the agents had already seen his communications with Tarrio." A1359. Because Lamond did not know he was under suspicion, he had no reason to delete them.

The district court's contrary reasoning rested on premises the record refutes. It treated Tarrio as having confessed directly to Lamond, ignored evidence that Lamond reported Tarrio's statements to his superior, and gave no weight to Lamond's circulation of Tarrio's admissions or Tarrio's repeated public confessions. It also discredited Lamond partly because "[t]he first use [of Telegram] was by Lamond, in July of 2020." A1381. The government now concedes (at 5, 53 n.9) the opposite. *See also* A1569.

A finding contradicted by the record cannot help carry the government's burden. *United States v. Streater*, 70 F.3d 1314, 1320-21 (D.C. Cir. 1995) (reversing where court "clearly erred in crediting" testimony contradicted by the witness's "documented contemporaneous statements").

## IV. Section 1001 Does Not Criminalize the Government's After-the-Fact Paraphrases of Lamond's Statements

The government defends Counts 2 and 3 by rewriting Lamond's statements. "[W]ould [it] be common" for Tarrio to "fish" becomes a question that "called for an affirmative answer" if Tarrio *ever* sought information (at 61 n.13). "[M]ore . . . one-sided" becomes a denial that Lamond *ever* provided Tarrio any information (at 62). And "trying to find out without tipping him off" becomes a warranty that Lamond provided *nothing* "about the status or inner workings" of an MPD investigation (at 63). The rewritten statements are easier to prosecute. But Lamond

never made them—and the government never explains how Lamond's actual words were false. *See* Op.Br. 3, 5-8.

### A. Count 2: "One-Sided" Was Not a Determinate Factual Denial

The government (at 62) says Lamond's statement—that his interactions with Tarrio were "more, you know, one-sided with just him telling me, you know, what their plans were"—was false because Lamond "repeatedly gave Tarrio law-enforcement information." That would matter only if Lamond had denied ever giving Tarrio information. He did not. Molnar asked whether it "would . . . be common" for Tarrio to "fish"—without defining "fish" or specifying any period or kind of information. A1674; A1678. Lamond answered in kind, with general characterizations, not categorical denials.

Unable to dispute that Molnar's question was vague and Lamond's answer hedged, the government inverts the law. Because the question "was broad and called for an affirmative answer if Tarrio sought information" (at 61 n.13)—regardless of Lamond's understanding—Lamond had to answer yes. That is backward. A conviction cannot rest on ambiguity in the question rather than falsity in the answer. "The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Bronston v. United States*, 409 U.S. 352, 360 (1973) (reversing a perjury conviction resting on a literally true but

unresponsive answer). Molnar never did. On the government's approach, the *vaguer* the question, the *easier* the conviction.

The government's implied fallback (at 61-62)—that Lamond's answer was intended to mislead—also fails. A statute punishing a "false statement" "does not criminalize statements that are misleading but true." *Thompson*, 604 U.S. at 418. The government never proved falsity. Lamond never claimed communications ran only one way. "More . . . one-sided" is comparative, not falsifiable by some give-and-take.

*United States v. Chapin* (at 60-62) does not bridge the gap. Chapin was a sworn witness who knew the grand jury's object, faced focused follow-up questions, and had a proven motive to lie. That context gave the disputed words "a reasonable and definite interpretation." 515 F.2d 1274, 1277, 1279-80, 1284 (D.C. Cir. 1975).

Lamond's interview defined nothing. The interview was voluntary—a request for assistance from fellow intelligence professionals investigating Tarrio's "getting information that [he] shouldn't have had." A1659-A1660. Lamond was never told he was a subject, A757, and was not under oath, A1659. The agents never asked the questions that would have fixed the propositions the government now prosecutes. If *Bronston*'s burden "to pin the witness down" binds a trained

examiner questioning a sworn witness who knows the inquiry's object, it binds two agents conducting a casual, unsworn interview at least as tightly.[15]

### B. Count 3: "Without Tipping Him Off" Was a Subjective Description

Asked whether Tarrio was "prepping" him "for what was coming," Lamond answered: "That was part of it, and the other part was I was trying to find out without tipping him off to the MPD investigation." A1667. Lamond's statement describes his asserted aim—what he was "*trying*" to do, not necessarily what he *did*. A person can *try* to avoid tipping off a source while sharing information that inadvertently had that effect. The government conflates act with intent.

On the government's reading (at 63), "tipping him off" meant providing any information "about the status or inner workings of the MPD investigation"—a definition that appears nowhere in the interview and under which every case-related communication becomes a "tip." Yet neither agent asked Lamond what he

[15] The government's cases (at 60-62) are inapposite. *United States v. Sampol*—a grand-jury perjury case—sustained flat denials falsified by "uncontradicted testimony," holding only that the factfinder may "decide the construction given the question by the defendant." 636 F.2d 621, 655 (D.C. Cir. 1980). *Sampol* lets a factfinder choose among constructions the exchange actually carried—and no construction of "would it be common . . . to fish" makes it "did Tarrio ever seek information." *United States v. Milton* rejected a defendant's resort to an out-of-context dictionary meaning, 8 F.3d 39, 45 & n.7 (D.C. Cir. 1993); here it is the government reading outside the exchange. And *United States v. Reveron Martinez reversed* a perjury conviction: "[a]t a bare minimum, the remark must have been literally false." 836 F.2d 684, 689-91 (1st Cir. 1988).

meant. Op.Br. 51-52. When the government's own investigators never fixed what a question meant, the defendant cannot be convicted of knowingly answering it falsely.[16]

Narrower readings are, and were, reasonable. Tarrio had publicly claimed responsibility, police in two jurisdictions had contacted him, and he traveled to Washington expecting arrest. Op.Br. 50-51, 56-57. A speaker could distinguish information already known to Tarrio from "tipping him off" as to when, where, or how police would arrest him.[17] No evidence showed Lamond disclosed the arrest plan. A1614-A1615.

---

[16] *United States v. Doost* (at 63-64) confirms that a "fundamentally ambiguous" question "may not, as a matter of law, form the basis of a prosecution." The "typical fundamental ambiguity case," where a defendant offers an interpretation under which "his answer would have been truthful," mirrors Lamond's case. 3 F.4th 432, 444 (D.C. Cir. 2021) (citation omitted).

The government's fallback—that Lamond provided information "of value" (at 63-64)—rests on a word Molnar never used, and raises an obvious line-drawing problem: how much assistance makes information valuable? The Rule 29 colloquy exposed the problem: the court questioned whether "without tipping him off" expressed "an opinion . . . as opposed to a fact," but then treated any nonpublic disclosure as a tip. A861-A864. That *post-hoc* definition converts a stated aim into a warranty of perfect execution. Under *Bronston*, the risk of that imprecision rests with the questioner.

[17] The government deems that reading "implausible" (at 64 n.15) by asserting Lamond tipped Tarrio off to the MPD's arrest plans. Even if Lamond informed Tarrio he had a signed arrest warrant, that would not have disclosed MPD's arrest plans for Tarrio. After the purported message, Tarrio believed he would be arrested at the January 6 protest. Op.Br. 14.

## V. Count 4 Rests on Speculation, Not Proof Beyond a Reasonable Doubt

Count 4 required proof that Lamond told Tarrio the arrest warrant had been signed. But the government concedes "no message was recovered" (at 64), and stacks "reasonable inference" upon "reasonable inference" to assume its content (at 64-65). Inferences drawn from communications of unknown content "cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation." *Jennings*, 351 A.3d at 1099, 1105-06 (citation omitted) (reversing where the calls' content was "otherwise unknown"); *United States v. Thorne*, 997 F.2d 1504, 1510-11 (D.C. Cir. 1993) (reversing where the factfinder could "only speculate") (citation omitted).

*First*, Lamond's denial was narrow and fits the undisputed record. Lamond did not deny discussing the warrant with Tarrio. He merely denied telling Tarrio "he had an arrest warrant." A1670-A1671. And the government does not dispute that Lamond knew for days the warrant had been signed—since New Year's Eve, A1376-A1377—without telling Tarrio, all while relaying Tarrio's flight information and movements to the arrest team. A1610-A1613. Evidence giving "equal or nearly equal circumstantial support" to guilt and innocence requires a finding of reasonable doubt. *United States v. Teffera*, 985 F.2d 1082, 1085 (D.C. Cir. 1993).

*Second*, the January 4th evidence proves timing, not content. The flight left at 12:55 p.m.; the last recovered message came at 12:58; Lamond changed the timer at 1:02; Tarrio had in-flight internet by about 1:28; and Tarrio's announcements followed shortly after. A1613-A1614. No witness saw a message sent, and the district court confirmed that "there aren't even indications that messages were sent that were deleted." A321-A322. The timer change—the government's inference that Lamond "wanted to make extra sure no one else saw it" (at 64-65)—is evidence of secrecy at most, not substance. Timing may identify a subject, but it cannot supply the words of a message no one recovered.

*Third*, Tarrio's statements do not identify the content of any message. The parking-garage remark—"he texted me in the air" (at 16)—does not say who "he" is or what any text said, and "[f]rom the air is when I knew they signed a warrant" gives a time of knowledge, not a source. Further, Tarrio's pre-flight messages point the other way. On January 2—well after Lamond knew the warrant had been signed—Tarrio told an associate, "Won't know until I land." A1612-A1613. The government's theory requires an inexplicable change of heart: having withheld the warrant's status for days, Lamond suddenly volunteered it mid-flight.

Tarrio's conduct is equally difficult to square with mid-flight notice of his coming arrest. The warrant was for a non-extraditable misdemeanor—Tarrio had to arrive in D.C. for arrest. A613. Though the government emphasizes Tarrio's

concern with a hate-crime designation (at 51-53), the submitted warrant carried that designation. *See supra* Part III.C.

Finally, the government's defense of the district court's clearly erroneous finding that Lamond "volunteered" this information to Molnar refutes itself. It defends the court's reading as "not unreasonable" because Lamond "spontaneously added" the denial "[d]uring questioning about whether MPD planned to arrest Tarrio 'without him knowing'" (at 66). But that sentence supplies the question the statement answered: asking whether MPD would arrest Tarrio "without him knowing" asks what Tarrio knew, and Lamond's statement that he had not told him about the warrant responds directly. A1670-A1671. Calling the answer "spontaneous[]" rewrites the district court's finding, and "not unreasonable" concedes the government cannot call that finding "correct." *See Streater*, 70 F.3d at 1320-21 (reversal for factual errors).

## VI. At Minimum, Reversal of Count 1 Requires Vacatur of Counts 2 through 4

Counts 2 through 4 independently deserve judgments of acquittal. At minimum, reversal on Count 1 requires vacatur of those counts because the false-statement findings were built on the obstruction holding. The government posits (at 67) that the court "independently, carefully, and painstakingly analyzed each of the false-statement counts." Yet the transcript shows the metastasis. Its falsity and intent findings drew on the same Telegram evidence and General Orders

supporting the obstruction verdict. *See* Op.Br. 58 n.17. The government's brief (at 62) concedes the connection by insisting the court properly "consider[ed] Lamond's other false statements and lack of candor to inform its verdict" on Count 2; five pages later (at 67), it declares the counts hermetically separate. The government cannot claim interdependence to sustain the verdicts while also claiming independence to limit the remedy.

*United States v. Rooney*, 37 F.3d 847 (2d Cir. 1994), is on point. After reversing a "corruptly" count the statute did not reach, the Second Circuit vacated the § 1001 convictions because the invalidated count's evidence and the government's "pejorative" framing infected them. *Id.* at 855-57; *United States v. Pelullo*, 14 F.3d 881, 898 (3d Cir. 1994) (reversing "tainted" counts). Tried alone, the false-statement counts likely would not have featured substantial evidence on policy-violating disclosures to Tarrio. *Cf.* Fed. R. Evid. 404(b).

The interdependence is self-evident: A defendant facing a 30-year obstruction felony has a powerful motive to lie, so his hedged answers read as calculated concealment. A defendant whose conduct amounted, at most, to policy violations, presents a different question entirely—his qualified answers read as an employee minimizing evidence of his misconduct, and the inference of *willful* falsehood falls apart.

## CONCLUSION

This Court should reverse all convictions and enter a judgment of acquittal, or, alternatively, vacate all convictions.

Respectfully submitted,

/s/ *Reno G. Varghese*

ANDREW E. GOLDSMITH
RENO G. VARGHESE
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
agoldsmith@kellogghansen.com
rvarghese@kellogghansen.com

*Appointed Counsel for Defendant-Appellant Shane Brian Lamond*

August 18, 2026

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(g), that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), the brief contains 6,500 words.

I further certify that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word in a proportionally spaced typeface (Times New Roman, 14 point).

/s/ *Reno G. Varghese*
Reno G. Varghese

August 18, 2026

# ADDENDUM

## TABLE OF CONTENTS

Page

Code of Law for D.C., ch. 19, § 862 (Mar. 3, 1901) ........................................ Add. 1

D.C. Code § 22-703 (1967) ........................................................................ Add. 1

D.C. Law 4-164, § 502, 29 D.C. Reg. 3976 (1982) ........................................ Add. 2

D.C. Law 9-268, § 2(c), 39 D.C. Reg. 5702 (1993) ........................................ Add. 3

D.C. Law 10-256, § 3, 42 D.C. Reg. 20 (1995) ............................................... Add. 5

D.C. Law 13-302, § 5, 47 D.C. Reg. 7249 (2001) ............................................ Add.6

**Code of Law for D.C., ch. 19, § 862 (Mar. 3, 1901)**

Sec. 862: Threats – Whoever corruptly, by threats or force, endeavors to influence, intimidate, or impede any juror, witness, or officer in any court in the District in the discharge of his duties, or, by threats or force, in any other way obstructs or impedes or endeavors to obstruct or impede the due administration of justice therein, shall be fined not more than two hundred dollars or imprisoned not more than three years, or both.

* * * * *

**D.C. Code § 22-703 (1967)**

(a) Whoever corruptly, by threats or force, endeavors to influence, intimidate, or impede any juror, witness, or officer in any court in the District in the discharge of his duties, or, by threats or force, in any other way obstructs or impedes or endeavors to obstruct or impede the due administration of justice therein, or whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats of force, to obstruct, delay, or prevent the communication to an investigator of the District of Columbia government by any person of information relating to a violation of any criminal statute in effect in the District of Columbia, or injures any person or his property on account of the giving by such person or by any other person of such information to any such investigator

in the course of the conduct of any criminal investigation, shall be fined not more than $1,000 or be imprisoned not more than three years, or both.

(b) As used in this section, the term 'criminal investigation' means an investigation relating to a violation of any criminal statute in effect in the District of Columbia, and the term 'investigator' means an individual duly authorized by the Commissioner or his designated agent to conduct or engage in such an investigation.

* * * * *

**D.C. Law 4-164, § 502, 29 D.C. Reg. 3976 (1982)[18]**

Sec. 502. Obstruction of Justice.

(a) A person commits the offense of obstruction of justice if that person.

(1) corruptly, or by threats or force, endeavors to influence, intimidate, or impede any juror, witness, or officer in any court of the District of Columbia in the discharge of his or her duties;

(2) corruptly by threats of force, in any way obstructs or impedes or endeavors to obstruct or impede the due administration of justice in any court of the District of Columbia;

[18] Codified as the new D.C. Code § 22-722.

(3) wilfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats of force, to obstruct, delay, or prevent the communication to an investigator of the District of Columbia by any person of information relating to a violation of any criminal statute in the District of Columbia;

(4) injures any person or his or her property on account of the person or any other person giving to a criminal investigator in the court of any criminal investigation information related to a violation of any criminal statute in effect in the District of Columbia; or

(5) injures any person or his or her property on account of the person or any other person performing his official duty as a juror, witness, or officer in any court in the District of Columbia.

(b) Any person convicted of obstruction of justice shall be fined not more than $1,000 or imprisoned not more than 3 years, or both.

* * * * *

**D.C. Law 9-268, § 2(c), 39 D.C. Reg. 5702 (1993)**

(c) Section 502 (D.C. Code § 22-722) is amended as follows:

(1) Subsection (a)(1) and (2) are amended to read as follows:

"(1) Knowingly uses intimidation or physical force, threatens or corruptly persuades another person, or by threatening letter or

communication, endeavors to influence, intimidate, or impede a juror in the discharge of the juror's official duties;

"(2) Knowingly uses, intimidating or physical force, threatens or corruptly persuades another person, or by threatening letter or communication, endeavors to influence, intimidate, or impede a witness or officer in any official proceeding, with intent to:

"(A) Influence, delay, or prevent the truthful testimony of the person in an official proceeding;

"(B) Cause or induce the person to withhold truthful testimony or a record, document, or other object from an official proceeding;

"(C) Evade a legal process that summons the person to appear as a witness or produce a document in an official proceeding;

"(D) Cause or induce the person to be absent from a legal official proceeding to which the person has been summoned by legal process; or

"(3) Harasses another person with the intent to hinder, delay, prevent, or dissuade the person from:

"(A) Attending or testifying truthfully in an official proceeding;

"(B) Reporting to a law enforcement officer the commission of, or any information concerning, a criminal offense;

"(C) Arresting or seeking the arrest of another person in connection with the commission of a criminal offense; or

"(D) Causing a criminal prosecution or a parole or probation revocation proceeding to be sought or instituted, or assisting in a prosecution or other official proceeding;"

(2) Subsection (b) is amended as follows:

(A) By striking the phrase "$1,000" and inserting the phrase "$10,000" in its place; and

(B) By striking the phrase "not more than 3 years" and inserting the phrase "not less than 3 years nor more than 10 years" in its place.

* * * * *

**D.C. Law 10-256, § 3, 42 D.C. Reg. 20 (1995)**

Sec. 3. Section 502 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective December 1, 1982 (D.C. Law 4-164; D.C. Code § 22-722), is amended as follows:

(a) Subsection (a) is amended as follows:

(1) By striking the word "or" at the end of paragraph (4);

(2) By striking the period at the end of paragraph (5) and inserting the phrase "or" in its place; and

(3) By adding a new paragraph (6) to read as follows:

"(6) corruptly, or by threats of force, any way obstructs or impedes or endeavors to obstruct or impede the due administration of justice in any official proceeding."

(b) Subsection (b) is amended to read as follows:

"(b) Any person convicted of obstruction of justice shall be sentenced to a maximum period of incarceration of not less than 3 years and not more than life, or shall be fined not more than $10,000, or both."

* * * * *

**D.C. Law 13-302, § 5, 47 D.C. Reg. 7249 (2001)**

Sec. 5. Section 502(b) of the District of Columbia Theft and White Collar Crimes Act of 1982 is amended as follows:

(a) Strike the word "life" and insert the phrase "30 years" in its place.

## CERTIFICATE OF SERVICE

I hereby certify that, on August 18, 2026, I caused to be filed electronically the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Reno G. Varghese*
Reno G. Varghese